UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
ACP INVESTMENT GROUP, LLC, and     :
NYPPEX HOLDINGS, LLC,              :
                                   :
                               Plaintiffs,    :    15-CV-9364 (JPO)
                                   :
           -v -                   :    OPINION AND ORDER
                                   :
DEXTER B. BLAKE, III,              :
                                   :
                               Defendant.     :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

       Defendant, Dexter B. Blake, III, brings this action under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, seeking confirmation of an arbitration award against Plaintiffs ACP Investment Group, LLC, and NYPPEX Holdings, LLC (together, "ACP"). ACP opposes Blake's motion and cross-moves to vacate in part the arbitrator's decision. For the reasons that follow, Blake's motion is granted and ACP's cross-motion is denied.

**I.    Background**

       This action arises from an arbitration initiated by Blake against ACP in September of 2015, after he resigned as ACP's Chief Operating Officer. (Dkt. No. 23 ¶ 3.) The arbitration was conducted pursuant to the 2014 Employment Agreement entered into by ACP and Blake. (Dkt. No. 16 at 1.) The proceeding concerned the interpretation of that Agreement in the wake of Blake's resignation. (*Id.*) The 2014 Employment Agreement provided, in a section titled "Dispute Resolution": "Any and all disputes, controversies or claims arising out of or relating to this Agreement, or the breach, termination or invalidity thereof, shall be finally and exclusively settled by arbitration conducted by the American Arbitration Association." (Dkt. No. 15, Ex. D at 5.)

1

In an arbitration award issued on May 19, 2016, the Arbitrator, Retired Magistrate Judge Carol E. Heckman, addressed a variety of issues relating to the employment relationship between Blake and ACP. Addressing a provision of the 2014 Employment Agreement that required forfeiture of only unvested share participations upon Blake's resignation (Dkt. No. 15, Ex. D at 4), the Arbitrator determined that of Blake's approximately three million share participations accrued over his tenure with ACP, just over two million were vested (Dkt. No. 15, Ex. E at 12). The Arbitrator, however, refused to value these vested shares or order their disposition, as she found that part of the dispute "not within the purview of the Arbitration clause in the 2014 Agreement." (Dkt. No. 15, Ex. E at 13.)

After the Arbitrator issued the Award, ACP sought clarification in a letter, asking the Arbitrator whether the portions of the Award addressing the vesting status of Blake's shares were "non-binding <u>dicta</u>," and stating that "the parties' dispute over whether Blake's [shares] vested . . . [was] outside the jurisdiction of the American Arbitration Association." (Dkt. No. 15, Ex. F at 2.) The Arbitrator denied ACP's request, noting that the 2014 Employment Contract provided for forfeiture only of *unvested* shares, that she had concluded that certain of these shares were vested and certain were not, and that the valuation and disposition of the shares she found to have vested exceeded the scope of her authority. (Dkt. No. 15, Ex. H.)

ACP initiated the instant action in this Court on November 30, 2015, seeking a temporary restraining order, which this Court denied. (Dkt. No. 1.) Blake now moves to confirm the arbitration award in full. (Dkt. No. 16.) ACP cross-moves for partial vacatur, challenging only the portion of the Award determining which of Blake's shares had vested. (Dkt. No. 21 at 2.)

**II.     Discussion**

A party challenging an arbitrator's decision faces a mountain range of steep burdens. The FAA permits vacatur of an arbitration award only under four narrow circumstances: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

The Second Circuit has "'consistently accorded the narrowest of readings' to this provision of law, in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (internal citation omitted) (quoting *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003)); *cf. TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc.*, 953 A.2d 726, 732 (Del. Ch. 2008) ("In fact, '[a] court's review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence.'" (alteration in original) (quoting *Way Bakery v. Truck Drivers, Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004))).

In considering a challenge to an arbitration award, "'[t]he principal question for the reviewing court is whether the arbitrator's award draws its essence' from the agreement to arbitrate, 'since the arbitrator is not free merely to dispense his own brand of industrial justice.'" *ReliaStar*, 564 F.3d at 85 (alteration in original) (quoting *187 Concourse Assocs. v. Fishman*,

3

399 F.3d 524, 527 (2d Cir. 2005)).  Where the parties have agreed to submit an issue for arbitration, courts will "uphold a challenged award as long as the arbitrator offers 'a barely colorable justification for the outcome reached.'"  *Id.* (quoting *Banco de Seguros*, 344 F.3d at 260).  "In other words, 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' a court's conviction that the arbitrator has 'committed serious error' in resolving the disputed issue 'does not suffice to overturn his decision.'"  *Id.* at 86 (quoting *United Paperworkers Int'l Union AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

ACP makes several arguments in favor of vacating the portion of the Arbitrator's award determining how many of Blake's share participations had vested.  First, ACP claims that the Arbitrator exceeded her powers because the issue of vesting was not within the scope of the arbitration.  Second, ACP claims that the Arbitrator's decision on the vesting issue was rendered in disregard of the terms of the Employment Agreement.  Finally, ACP claims that the award should be vacated due to procedural irregularities in the arbitration process.  But ACP is fighting an uphill battle on downhill skis.

ACP first argues that the vesting issue was not properly before the Arbitrator because it did not derive its essence from the 2014 Employment Agreement.  However, the Second Circuit has made clear that it is only "[w]hen it is clear that the arbitrator '*must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference, either . . .)'" that the determination should be set aside.  *In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 94 (2d Cir. 1988) (emphasis in original) (quoting *Ethyl Corp. v. United Steelworkers*, 768 F.2d 180, 184-85 (7th Cir. 1985) (Posner, J.)).

The arbitration clause in the 2014 Employment Agreement is broadly worded. It provides for jurisdiction over "[a]ny and all disputes . . . arising out of or relating to this Agreement." (Dkt. No. 15, Ex. D at 5.) The Agreement also addresses vesting in several places. It provides that upon resignation Blake shall "forfeit any and all rights in, and entitlement to . . . unvested rights, grants and awards . . . in connection with long term incentives including share participations . . . (in general, as described in the agreements provided to Employee)." (*Id.* at 4-5.) It also confirms that "[v]esting provisions shall be described either in the award agreement, the Company's long term performance incentive plan or its amended and restated operating agreements." (*Id.* at 3.) These provisions bring the vesting issue within the scope of the Agreement's arbitration clause.

ACP argues that the fact that the 2014 Employment Agreement mentions extrinsic agreements about vesting puts the vesting issue wholly outside the scope of this Agreement. (Dkt. No. 21 at 16-17.) But the opposite is true. These references make clear that the vesting issue arose from (or at least relates to) the 2014 Employment Agreement so as to bring the vesting issue within the Agreement's capacious arbitration clause. Their mention, in fact, has the effect of incorporating these extrinsic documents into the Employment Agreement by reference. There is also evidence that the parties submitted the vesting issue to the Arbitrator—including testimony at the arbitration hearing by ACP's Treasurer Robert Zimmel on the vesting status of Blake's shares, and the admission of documentary evidence regarding the vesting status of the shares as well as the terms and conditions of Blake's various incentive plans. (Dkt. No. 14, Ex. C at 744-46.)

Based on these considerations, the most natural conclusion is that the vesting question was squarely within the scope of the Arbitrator's authority. But at the very least, it is certainly

not clear that the Arbitrator *must* have derived the award from something neither within nor incorporated into the Employment Agreement (the standard required to disrupt the Arbitrator's decision on this issue).  See *In re Marine Pollution Serv., Inc.*, 857 F.2d at 94.[1]

ACP next argues that even if the Arbitrator had jurisdiction over the vesting issue, she imperfectly executed her powers by rendering a decision in manifest disregard of the Employment Agreement.  ACP faults the Arbitrator for relying on unreliable evidence, such as a draft 1999 Employment Agreement and a 2005 Equity Participation Statement, and essentially asks this Court to reconsider the Arbitrator's decisions to rely on these documents and to reassess the conclusions she drew from all of the evidence presented to her.  (Dkt. No. 21 at 16-17.)

But this brand of second-guessing runs directly counter to "the 'great deference' which must be paid to arbitral panels by federal courts."  *Wallace*, 378 F.3d at 193 (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003)).  "To the extent that a federal court may look upon the evidentiary record of an arbitration proceeding at all, it may do so only for the purpose of discerning whether a colorable basis exists for the panel's award so as to assure that the award cannot be said to be the result of the panel's manifest disregard of the law."  *Id.*  "[W]hatever the weight of the evidence considered as a whole, '[i]f a ground for the arbitrator's decision can be inferred from the facts of the case, the

---

[1] ACP makes much of the Arbitrator's conclusion that the valuation and disposition of the vested shares was outside the scope of her authority, whereas she deemed the vesting status of the shares within her authority.  (Dkt. No. 15, Ex. E at 12-13.)  But even were the Court to conclude that the Arbitrator's conclusions about the reach of her authority are inconsistent, such a finding would still not provide grounds for vacatur.  *See Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) ("Internal inconsistencies in the [arbitrator's] opinion are not grounds to vacate the award notwithstanding the [movant's] plausible argument that the arbitrator's decision was misguided or our own concerns regarding the arbitrator's conclusion." (alterations in original) (quoting *St. Mary Home, Inc. v. Service Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 44-45 (2d Cir. 1997))).

award should be confirmed.'" *Id.* (second alteration in original) (quoting *Fahnestock & Co., Inc. v. Waltman*, 935 F.2d 512, 516 (2d Cir.1991) (internal quotation marks and citation omitted)).

Here, the Arbitrator justified her conclusion regarding the vesting status of Blake's shares based on her interpretation of an "Equity Participation Statement." In her Award, she wrote: "Blake's equity participation as of October 11, 2005 identifies his allocated share participations as being 3,061,680. Of those allocated, those available to sell are listed as 2,092,896. I agree with Claimant's view that the only reasonable construction of the 2005 Statement is that shares available to sell are vested." (Dkt. No. 15, Ex. E at 12.) She arrived at this decision after considering arguments on this issue at the arbitration hearing and weighing the 2014 Employment Agreement and numerous other documents relevant to its interpretation. She subsequently confirmed her conclusion on this question following additional, targeted briefing. The record in this case thus provides more than a colorable basis for the Arbitrator's decision, and ACP has failed to show any "egregious . . . misapplication of legal principles" sufficient to suggest manifest disregard of the governing law. *Wallace*, 378 F.3d at 190.

Finally, ACP seeks vacatur on the ground that procedural irregularity in the arbitration process denied ACP fundamental fairness and due process. In particular, ACP cites the Arbitrator's refusal to grant postponements or permit amendment of the exhibit list, as well as her lack of clarity on the intended scope of her decision, to suggest that the Award "was procured by fraud or other undue means." (Dkt. No. 21 at 24.)

While the FAA permits vacatur where an arbitration award was obtained through fraud or undue means, 9 U.S.C. § 10(a)(1), or where the arbitrator's procedural misconduct prejudices a party, *id.* § 10(a)(3), the burden here is yet another steep slope for ACP to climb. To justify vacatur on the grounds of fraud or undue means, it must be "abundantly clear" that the award

7

was procured through improper means. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 105 (2d Cir. 2013) (quoting *Karppinen v. Karl Kiefer Mach. Co.*, 187 F.2d 32, 34 (2d Cir. 1951)). As regards procedural irregularities, arbitrators "need not follow all the niceties observed by the federal courts." *Id.* (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)). Rather, "misconduct occurs under this provision only where there is a denial of 'fundamental fairness.'" *Id.* (quoting *Tempo Shain*, 120 F.3d at 20).

ACP has failed to make it abundantly clear that the arbitration award was procured through improper means or through a process that denied it fundamental fairness. The bulk of ACP's claim on this issue results from its eleventh-hour substitution of counsel in the weeks before the arbitration hearing and the Arbitrator's subsequent refusal to allow new counsel additional time to prepare or the opportunity to introduce additional exhibits or amended counterclaims. (Dkt. No. 23 at 5-9.) ACP's suggestion that it was given insufficient notice that the issue of vesting would be raised in the arbitration is belied by the evidence in the record, including Blake's express mention in the arbitration complaint of whether he must "forfeit stock awarded to him under a stock incentive plan because he resigned" and his request for "an updated statement of his equity participation" (Dkt. No. 23, Ex. A ¶ 2, 62), and the Arbitrator's comment at the hearing that the issue of how many shares Blake had was "part of the claim indirectly" (Dkt. No. 23 at 12). In any event, ACP had the opportunity to specifically challenge this portion of the Arbitrator's ruling with additional letter briefing. (Dkt. No. 15, Ex. F.)

Under these circumstances, the Court cannot conclude that the Arbitrator's actions were improper or that they denied ACP fundamental fairness. The Court must therefore refrain from retrospectively micromanaging the Arbitrator's capable handling of the issues properly before her.

### III.    Conclusion

For the foregoing reasons, Blake's motion to confirm the arbitration award is GRANTED, ACP's cross-motion to vacate in part the arbitration award is DENIED, and the arbitration award is hereby CONFIRMED.

The Clerk of Court is directed to close the motions at Docket Number 12 and Docket Number 20 and to close this case.

SO ORDERED.

Dated: October 13, 2016
       New York, New York

_____
J. PAUL OETKEN
United States District Judge